UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAYMIE LUTOMSKI                                              CIVIL ACTION

VERSUS                                                      NO. 11-2618

DWIGHT J. CATON, SR., ET AL.                                SECTION "H" (1)

ORDER AND REASONS

The matter before the Court is Defendant's Motion for Summary Judgment. (Doc. 41.)  For the reasons that follow, Defendant's Motion is GRANTED.

BACKGROUND

On April 27, 2009 Plaintiff Jaymie Lutomski ("Lutomski") traveled with Dwight J. Caton, Sr. ("Caton"), President of Modern American Recycling Service, Inc. ("MARS"), Mike Dunavant ("Dunavant"), MARS' Vice President, and Dara Robichaux, a friend of Lutomski's, to Las Vegas, Nevada for a two day business trip.  Lutomski accompanied Caton on the trip to evaluate whether

she was interested in working for MARS as Caton's personal assistant.  Likewise, Caton was evaluating Lutomski for the position.

On May 12, 2009 Lutomski applied to be Caton's personal assistant at MARS.  On May 18, 2009 Lutomski accepted the position and began work.  Lutomski's primary job duties were to accompany Caton on business trips and to handle record keeping and paperwork.  Lutomski resigned from her position on October 16, 2009.

On February 3, 2010 Lutomski filed a Charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC").  On July 22, 2011, the EEOC closed its processing of Lutomski's charge by issuing her a Notice of Right to Sue.  Plaintiff filed suit on October 18, 2011 alleging sexual harassment, retaliation, hostile work environment, illegal suspension, termination, discharge and/or constructive discharge.

On January 29, 2013 MARS filed a Motion for Summary Judgment.  (Doc. 41.)  Lutomski opposed the Motion on February 5, 2013.  (Doc. 47.)  MARS filed a Reply on February 13, 2013. (Doc. 55.)  The Court held oral argument on the Motion on February 27, 2013 and took the Motion under submission.  (Doc. 60.)

**LEGAL STANDARD**

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (2012). A genuine issue of fact exists only "[i]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the nonmovant and draws all reasonable inferences in his favor. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528(5th Cir.1997). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir.1995). Summary judgment is appropriate if the non-movant "[f]ails to make a showing sufficient to establish the existence of an element essential to that party's case...." *Celotex Corp. v. Catrett*, 477 U.S. 317,324 (1986). "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial. *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293,301 (5th Cir.2004) (internal citations omitted). "We do not ... in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382,394 (5th

Cir.2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069,1075 (5th Cir.1994)). Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion." *Boudreaux v. Banctec, Inc.*, 366F.Supp.2d 425, 430 (E.D.La.2005).

**LAW AND DISCUSSION**

A thorough review of the record reveals that no genuine issue of fact exists.  Accordingly, summary judgment is granted.

I.      *Lutomski's Allegations*

Lutomski went to Las Vegas in April of 2009 with Caton, and others, as an interview for MARS.  (Doc. 41-3 at 16.)  Lutomski was not working for MARS at the time.  While in Las Vegas Caton paid for Lutomski to stay at the Wynn Las Vegas.  (*Id.* at 37.)  He also gave Lutomski approximately one hundred dollars to gamble with.  (*Id.*)  Lutomski  asserts that on her trip to Las Vegas with Caton he attempted to hold her hand as much as eight times.  (*Id.* at 4.)

While they were in Las Vegas, Caton, Lutomski, and Dara Robicheaux went shopping.  (*Id.*)  During the shopping trip, on one occasion, Caton told her that she would look sexy in a one piece fitted leather suit with zippers.  (*Id.*)  Caton also pointed out dresses that would be flattering on Lutomski.  (*Id.*)  Further, Caton bought Lutmoski clothes to wear for an event they attended in Las Vegas.  (*Id.* at 7.)  Specifically, he bought her a seven hundred and fifty dollar pair of shoes, a dress for a few hundred dollars, and accessories worth approximately one hundred dollars.  (*Id.*)  These

items were picked out together.  (*Id.* at 8.)   Lutomski believes that these actions were

inappropriate.  (*Id.* at 9.)

Subsequent to the trip to Las Vegas Lutomski accepted a position with MARS as Caton's

personal assistant.  Lutomski took the job knowing that she would be traveling with Caton.  (*Id.* at

30.) Lutomski took the job despite her experience with Caton in Las Vegas.  (*See id.* at 17-18) ("48

hours with [Caton] who is, for lack of a better term, full of [themself], I knew from experience that

I could be able to then teach this person that I cannot be treated like that").

After she began working at MARS she took two or three trips to Mobile, Alabama with

Caton and Dunavant.  (*Id.* at 25.)  When she first started her employment she would always sit in

the back seat of the vehicle.  (*Id.* at 26.)  After a few months she was forced to sit in the passenger

seat.  (*Id.*)  Lutomski alleges that when a third person rode with them on trips, Caton would ride

behind her and begin to massage her neck and shoulders.  (*Id.* at 27.)  Lutomski would object to the

touching, say "thank you" and "that's enough," and lean forward out of Caton's reach.  (*Id.*)  On the

occasions where Lutomski and Caton both sat in the front seat, Caton would hold her hand.  (Doc.

23 at ¶13.)  Additionally, Caton would grab Lutomski's hand, kiss it, and would tell her "have I told

you how gorgeous you are today?"  (*Id.*)

In July 2009 Lutomski reminded Caton of her family vacation planned at the end of

September 2009.  (Doc. 41-3 at 40.)  Lutomski alleges that Caton replied that he wasn't sure if he

could let her be away from him for that long.  (*Id.*)  At that point, Lutomski contends that a

mechanic walked into the office and yelled "you're fixing to get fired if you keep asking me. I told you I would think about it and I don't want you to bring it up again." (*Id.* at 40-41.) Lutomski then pressed the issue explaining that her fiancee's mother was waiting on her to make final plans. Caton then told Lutomski to "get [her] s- -t and go the f- -k home." (*Id.* at 41.) Lutomski believes that Caton's actions constitute sexual harassment and some form of intimidation and control. (*Id.*)

Lutomski proceeded to take time off to go on her personal trip. Subsequently, Caton suspended her for one week. (*Id.* at 47.) Caton did not give Lutomski an explanation for the suspension. (*Id.*) Lutomski assumed that it was because (1) she did not give into his advances and (2) she went on the trip. (*Id.*) Lutomski stated that he was unahppy with her going on the trip for one week and that he would get mad at an employee, male or female, if they crossed him and he was unhappy with it. (*Id.* at 48.) After her week long suspension Caton allowed her back stating "I hope she learned her lesson. I hope she takes her job seriously when she comes back." (*Id.*)

In August of 2009 Lutomski and Caton's wife, Jody, had a phone conversation. (*Id.* at 51.) During this conversation Lutomski told Jody that she had no romantic feelings for her husband, that she liked her job, and that she was learning more each day. (*Id.*) Subsequent to this conversation, Lutomski alleges that she was treated differently at work. (*Id.* at 55.) Specifically, Lutomski was no longer wanted or needed on trips with Caton. (*Id.*) Lutomski reasons that this is because Caton finally realized that his advances were not working. (*Id.* at 56–57.)

Lutomski avers that the complained of harassment ended in September of 2009. Lutomski

resigned from MARS on October 16, 2009.  (*Id.* at 61.)

II.    *Sexual Harassment*

    A.    <u>Arguments of the Parties</u>

Defendant argues that the alleged actions of Caton were not sufficiently severe or pervasive so as to create either an objectively or subjectively hostile or abusive working environment. Defendant alleges that Caton's flirtatious statements, grabbing of Lutomski's hand, and massaging Lutomski's shoulders and neck are not actionable conduct under Title VII.  Moreover, Defendant avers that Caton's alleged actions did not interfere with Lutomski's work performance or competence. Ultimately, the conduct that Lutomski complains of are not actionable conduct under Title VII and accordingly her claim must be dismissed with prejudice.

Plaintiff avers that the harassment did affect a term, condition, or privilege of Lutomski's employment.  (Doc. 47 at 5.)  Plaintiff contends that Caton's unwanted sexual advances began on their first trip to Las Vegas together, and that she was forced to endure a hostile work environment when she denied those advances.  (*Id.* at 7.)  Plaintiff argues that being forced to endure unsolicited and unwanted conversations with sexual overtones, holding hands, rubbing neck, being showered with expensive gifts, in their totality arise to the pervasiveness required to be actionable under Title VII.  Moreover, Plaintiff notes that MARS did not have an anti-harassment policy and did not train employees for procedures relating to how sexual harassment should be investigated or remedied.

B.    Analysis

Caton's actions were not sufficiently severe or pervasive to be actionable under Title VII. Accordingly, Lutomski's sexual harassment claim is dismissed.

Under Title VII, it is illegal "for an employer to fail or refuse to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. 2000e-2(a) (1).  This text prohibits sexual harassment that takes the form of tangible employment action, such as a demotion or denial of promotion, or the creation of a hostile or abusive working environment. *Lauderdale v. Tex. Dept. of Criminal Justice*, 512 F.3d 157, 162 (5th Cir. 2007) (citations omitted). Where there is a claim of harassment against a supervisor, as is the case here, there are four elements of a hostile working environment claim: (1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a "term, condition, or privilege" of employment. *Id.* (citing *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999)).

For the harassment to affect a "term, condition, or privilege" or employment, a plaintiff must "subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)).  In order to be sufficiently severe or pervasive, the conduct at issue cannot merely be tinged with offensive sexual connotations, but must actually constitute discrimination because of sex.  *La Day v. Catalyst Tech. Inc.*, 203 F.3d 474, 478 (5th Cir.

2002) (citations omitted).

To determine whether the workplace conduct is adequately severe or pervasive courts look to the totality to the circumstances. *Stewart v. Miss. Transp. Com'n*, 586 F.3d 321, 330 (5th Cir. 2009).  Specifically, "[c]ourts must consider the following circumstances: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Ramsey v. Henderson*, 286 F.3d at 268 (quoting *Walker v. Thompson*, 214 F.3d 615, 624 (5th Cir. 2000)) (internal quotations omitted).  Ultimately, "employees who are subjected to insults, epithets, and other workplace degradations often see their claims rejected under this demanding standard." *Willis v. Williamson*, No. 12-cv-2069, 2012 WL 6929339, at *4 (W.D. La. Nov. 19, 2012).

Lutomski worked directly with Caton six days a week for approximately twelve hours a day, totaling around 72 hours a week.  (Doc. 41-3 at 66.)  She worked with Caton for a five month period.  (*Id.*)  During this time Lutomski alleges that she was subject to his harassing comments on a near daily basis.  (*Id.* at 64.)  Accordingly, Lutomski was subjected to frequently unpleasant and boorish conduct perpetuated by Caton.

Lutomski's Title VII claims fail, however, when it comes to the lack of severity of the conduct, the fact that the conduct was not physically threatening or humiliating, and that the conduct did not interfere with her work performance.  Accordingly, looking to the totality of the circumstances, Lutomski's fails to present evidence sufficient to meet the high burden to sustain

a claim under Title VII.

First, Caton's conduct was not severe enough to rise to the level to be an actionable Title VII claim.  Lutomski testifies that Caton said that she was sexy, that he massaged her shoulders and held her hand, and told her that she was gorgeous.  Caton did not touch Lutomski in a sexual manner, e.g. on her breasts, buttocks, or legs.  Moreover, Caton neither attempted to kiss Lutomski nor propositioned her for sex.  While Lutomski may have been offended by Caton's conduct, the Courts have repeatedly held that this type of conduct is not severe enough to create a hostile work environment.[1]  In the alternative, Courts have found much more severe conduct to be sufficiently severe to affect a term, condition, or privilege of employment.[2]  The Court finds that the conduct

---

[1]

*See, e.g., Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (the mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (Courts have continuously held that simple teasing, offhand comments, isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment); *Shepherd v. Comptroller of Public Accounts of the State of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999) (the touching of an employee's shoulder is not the type of severe conduct that courts have found to create a hostile environment); *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 328 (5th Cir. 2004) (finding that having a remark made about another employee's body, being slapped on the behind with a newspaper, having her breasts and behind grabbed or brushed against, being held and tried to kiss, being asked to come in early to be alone, and being watched while in the bathroom washing her hands is insufficiently severe to affect a term, condition, or privilege of employment); *Gibson v. Potter*, 264 Fed. Appx. 397, 398 (5th Cir. 2008) (conduct of supervisor who grabbed plaintiff on the buttocks and made suggestive comments while she was conversing with another employee is not sufficiently severe or pervasive to alter a term or condition of employment; *Derouen v. Carquest Auto Parts, Inc.*, 275 F.3d 42, 42 (5th Cir. 2001) (plaintiff's allegations that co-worker attempted to grab her breast, put his hand on and rubbed her thigh, and that customer made sexually threatening remarks to her do not rise to the level necessary to support a hostile work environment claim)

[2]

*See, e.g., Harvill v. Westward Communications, LLC*, 433 F.3d 428, 435–6 (5th Cir. 2005) (conduct is sufficiently severe to affect a term, condition, or privilege of employment when employee endures, over a seven-month period, being grabbed and kissed on the cheek, having rubber bands popped at her breasts, having her breasts fondled numerous times, having her buttocks patted numerous times, and being rubbed

that Lutomski endured is not severe enough to raise it to this level.

Additionally, the Court is perplexed by Lutomski's acceptance of the job after Caton repeatedly made her feel uncomfortable in Las Vegas during her job interview.  At this point she had the opportunity decline the job and avoid all of the alleged problems that she dealt with while working for Caton.  This Court has painstakingly researched court decisions from across the United States for assistance in how to analyze such a situation.  Unfortunately, the Court could find none. The Court pontificates that this is most likely because a person put in this type of situation before they accept the job likely declines the job after they are subjected to such an experience.  The fact that Lutomski did not find the conduct of Caton so severe as to deter her from taking the job weighs heavily in favor of Caton's conduct as insufficiently severe so as to raise it to a level of a hostile work environment.

Second, Caton's conduct was not physically threatening of humiliating.  While his comments were boorish, they do not go beyond that.  Significant to this Court is that Lutomski was fully aware of Caton making offensive remarks prior to her accepting her position with MARS.  Courts have further held that a plaintiff "[m]ust show that implicit or explicit in the sexual content is the message that the plaintiff is incompetent because of her sex." *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 270 (5th Cir. 1998).  Caton's comments and actions are merely those of an arrogant man

---

against from behind); *Taylor-Rogers v. Robb & Stucky, Ltd.*, 82 Fed. Appx. 974, 975 (5th Cir. 2003) (evidence that co-employee rubbed up against plaintiff on a daily basis, simulated a sex act with her, and unbuttoned her blouse to touch her breast underneath her bra was sufficient to create a genuine issue of fact as to the severity and pervasiveness of the harassment)

entranced by his own inflated ego.  His comments do not implicitly or explicitly insinuate that Lutomski was incompetent.  Caton's actions echo that his rude comments had no relation to her competence as evidenced by the fact that he directed Lutomski work with clients, travel with him, and was training her to take on more duties and fulfill a larger role within MARS.

This Court finds this case to be on point with *Buenrostro v. Flight Safety Intern., Inc.*, 62 Fed. Appx. 556, 556 (5th Cir. 2003).  In that case the plaintiff asserted that her former supervisor discriminated against her because of her gender.  In support she supplied evidence of being hired based on her appearance, being invited to lunch, being complimented on her appearance, being disfavored in comparison to another woman who was allegedly her supervisor's paramour, and a change in attitude against plaintiff after she refused her supervisor's advances.  *Id.*  The Fifth Circuit found that these complained of actions did not qualify as conduct egregious enough to alter the conditions of her employment.  *Id.*  The Fifth Circuit highlighted several Seventh Circuit cases in support of its holding.  *Id.* (citing *Weiss v. Coca-Cola Bottling Co. of Chicago*, 990 F.2d 333, 334 (7th Cir. 1993) (rejecting a claim when supervisor asked plaintiff for dates); *Baskersville v. Culligan Int'l Co.*, 50 F.3d 428, 433 (7th Cir. 1995) (rejecting a claim when supervisor called plaintiff a pretty girl); *Scott v. Sears, Roebuck & Co.*, 798 F.2d 210, 211 (7th Cir. 1986) (rejecting a claim when supervisor repeatedly propositioned plaintiff)).  Similarly, the Court finds that the complained of actions do not qualify as sufficiently egregious so as to alter the conditions of employment.

Lastly, the Court finds that Caton's conduct did not sufficiently interfere with Lutomski's work performance or product.  She continually testified that she did not let her work suffer, that

she was lucky to have her job, and that she enjoyed her job.  Additionally, Lutomski expressed that she was upset when Caton did not take her on his work travels.  While Lutomski testified that she experienced headaches and complained of her work to her friends in a social setting, this is insufficient to raise a genuine issue of fact as to whether Caton's conduct sufficiently interfered with her work performance.  Ultimately, as illustrated in her own testimony, Lutomski fails to provide evidence that Caton's conduct sufficiently interfered with her work performance and work product.

The Supreme Court has noted that these standards are "[s]ufficiently demanding to ensure that Title VII does not become a general civility code.  Properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."  *Faragher*, 524 U.S. at 788.  These are exactly the types of allegations that Lutomski testifies to.  Accordingly, Lutomski has not raised a genuine issue that the harassment affected a "term, condition, or privilege" of employment.  As such, Lutomski's sexual harassment claim is dismissed.

III.    *Constructive Discharge*

"A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign."  *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (quoting *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 771 (5th Cir. 2001)).  Six factors are used to determine whether an employer's actions constitute a constructive discharge.  *Id.*  These factors are: (1) demotion; (2) reduction in salary;

(3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not. *Id.*

The court must make an objective inquiry and ask whether a reasonable person in the plaintiff's shoes would have felt compelled to resign. *McCoy*, 492 F.3d at 557 (citations omitted). A plaintiff alleging that sexual harassment alone caused her to resign must present something more than what is required to establish a harassment or hostile work environment claim. *Aryain v. Wal-Mart Stores Tex., LP*, 534 F.3d 473, 480 (5th Cir. 2008) (citations omitted).  Ultimately, it is the resigning employee's burden to prove constructive discharges. *Haley v. Alliance Compressor*, LLC, 391 F.3d 644, 650 (5th Cir. 2004) (citations omitted).

While this Court understands that a plaintiff is not required to demonstrate that the employer specifically intended to force resignation, *Haley*, 391 F.3d at 650, the plaintiff must present some sort of relevant evidence to show that a reasonable employee would feel compelled to resign. *Lauderdale v. Tex. Dept. of Criminal Justice, Institutional Div.*, 512 F.3d 157, 167 (5th Cir. 2007).  Lutomski presents no evidence that she was demoted, had her salary or job responsibilities reduced, was reassigned to menial or degrading work, or was offered an early retirement. Lutomski merely alleges that the harassment perpetuated by Caton encouraged her resignation.

Lutomski's allegations of harassment fail to support a claim for constructive discharge for two reasons.  First, Lutomski testifies that the harassment stopped one month before she quit her

job.  Accordingly, it is nearly impossible to prove that the harassment was calculated to force

resignation when it had stopped.  *See Haley*, 391 F.3d at 650 (an aggravating factor used to support

a constructive discharge claim include an employer's invidious attempt to *perpetuate intolerable*

*conditions* compelling resignation).  Second, even when Caton was harassing her, there is no

evidence that it was calculated to encourage her resignation.  In fact, Lutomski even testifies that

Caton stated that he did not want her to leave.  Not only is there no evidence of a hostile work

environment, *see infra.*, there is no evidence of any aggravating factors.

In sum, Lutomski has merely reiterated the facts that she used to constitute her hostile

work environment claim.  She has offered no additional facts required to establish the greater

degree of harassment necessary to support a constructive discharge claim.  *See Lauderdale*, 512

F.3d at 167.  As such, Lutomski has failed to create a genuine issue of material fact that a

reasonable employee would have been compelled to resign under the same or similar

circumstances.  Accordingly, Lutomski's claim for constructive discharge is dismissed.

IV.    *Retaliation*

Title VII prohibits an employer from discriminating against an employee who has opposed

an employment practice made unlawful under Title VII.  42 U.S.C. § 2000e-3(a).  "To establish a

prima facie case of retaliation, the plaintiff must establish that (1) [she] participated in an activity

protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3)

a causal connection exists between the protected activity and the adverse employment action."

*McCoy*, 492 F.3d at 556-7.  "Protected activity is defined as opposition to any practice rendered

unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Communications, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003). The antiretaliation provision of Title VII "[c]overs those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) Ultimately, summary judgment is appropriate if the plaintiff cannot support all three elements. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 769 (5th Cir. 2001).

Lutomski's retaliation claim fails on both the second and third element. The Court finds that Lutomski has failed to create a genuine issue of fact that Caton took adverse employment against her and that a causal connection existed between the protected activity and the adverse employment action. Accordingly, Lutomski's retaliation claim is dismissed.

Lutomski alleges that Caton suspended her for a week without pay because she rebuked his advances. Her testimony, however, reveals something different. Lutomski was suspended after she took a week long personal vacation. She testified that she does not know why Caton suspended her. Lutomski, however, admitted that she knew that she was not entitled to paid vacation, yet figured that there was no harm in asking for vacation. She testified that Caton was furious that she asked to take vacation. Even in light of his reaction, Lutomski still decided to go on a week long personal vacation. Lastly, Lutomski stated that Caton got mad at anybody whenever they did something that he did not like, both male and females.

In light of Lutomski's own testimony it is evident to the Court that no adverse action was

taken. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (an adverse action is one that might have dissuaded a reasonable employee from a charge of discrimination).  Additionally, even if the suspension could be considered adverse action, there is no causal relationship between her dismissal of Caton's advances and the week long suspension.  Significantly, there is a causal connection between the time she took her personal vacation and when she was suspended. Ultimately, Lutomski does not provide substantial evidence to show that she was retaliated against. Accordingly, Lutomski's retaliation claim is dismissed.


## CONCLUSION

For the foregoing reasons Defendant's Motion for Summary Judgment is GRANTED (Doc. 41) and all of Plaintiff's claims are DISMISSED.

Judgment shall be entered in accordance with this Order.

New Orleans, Louisiana on this 21st day of March, 2013.


**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT COURT JUDGE**

-17-